HALL *vs.* JACOBS, *et al.* Lessee. (*v. 244 n.*)

ERROR to *Anne-Arundel* County Court. Ejectment on a joint demise to recover the following tracts of land, viz. *The Garden Recovered, Denchworth* and *Westal's Resurvey.*

The case was this: *Richard Jacobs,* son of *Joseph,* being seized in fee of the lands in dispute, on the 2d of January 1783, by his last will and testament devised the same to be equally divided amongst his three children, *Joseph, Dorsey* and *Rachel,* and their respective heirs, for ever. On the 1st of March 1783, the testator died so seized and without having revoked the said devise. *Joseph* and *Rachel,* the devisees, after the death of the testator, died seized of two third parts of the said lands, intestate, and without issue, some time in the year 1800, and the said two third parts descended to *Dorsey Jacobs. Dorsey Jacobs,* a devisee in the will aforesaid, being seized in fee of the lands, died intestate and without issue, some time in the year 1803, leaving no brother or sister of the whole blood, but leaving the lessors of the plaintiff, to wit, *John Jacobs,* his uncle, and the brother of the whole blood to his father *Richard,* the testator, and *Elizabeth Walker* and *Hannah Fowler,* his aunts and the sisters of the whole blood to his said father. *Richard,* the testator, at the time of his death left a widow named *Patience,* (the mother of *Joseph, Dorsey* and *Rachel,* the devisees aforesaid,) who intermarried with a certain *Jesse Hall,* by whom she had issue *John Hall,* the present defendant, also *Daniel Hall, Elizabeth Hall, Richard Jacob Hall* and *Sarah Hall,* now *Sarah Cromwell.* On these facts the opinion of the county court was delivered by

CHASE, Ch. J. The question submitted to the court in this case is, whether the uncles and aunts of the whole blood of *Dorsey Jacobs* are to be preferred to his brothers and sisters of the half blood. The question arises under the act to direct descents, 1786, *ch.* 45, *sec.* 2. In expounding acts of assembly, the intention of the legislature is to be regarded, and that intention must be collected from the whole act, or those parts which relate to the subject matter in controversy, and the objects which the legislature apparently had in view. The great and principal object was to prevent the land of the intestate from descending to the eldest son, in exclusion of his brothers and sisters, and to make it descendible to all the children equally, and where there were no children of the intestate, to make it descend equally among his collateral relations standing in the same degree *in stirpe,* or by representative, having regard to the line, paternal or maternal, from which the land descended, and giving a preference accordingly. The mode adopted by the general assembly to find out the persons who among collateral relations, were

R J died in 1783, having devised certain lands to be equally divided between his three children J, D and R, and their respective heirs. In 1800 J and R died intestate, and without issue D died in 1803, intestate, and without issue, leaving no brother or sister of the whole blood, but leaving J his uncle, (brother of the whole blood of R J,) and E and F his aunts; (sisters of the whole blood of R J)—P, the widow of R J, and mother of J, D and R, intermarried with J H, by whom she had issue J H—Held, that the interest in the one third of the land which was vested in D, by the will of his father R J, was an estate by *purchase,* and as such embraced by the act of 1786, *ch.* 45, and on his death descended to his brothers and sisters of the half blood; that his interest in the two thirds, which were devised by the same will to J and R, and which, at their deaths descended to him, was not an estate embraced by any of the provisions of the said act, and descended at the death of D, to J J the brother of R J, to the exclusion of E and F. An estate by *purchase* at common law, and within the meaning of the said act of assembly, is an estate acquired by sale or gift, or by any other method, except only that of descent. The words in the said act, "and not derived from or through either of his ancestors," mean "and not by descent."

1817.

Hall
vs
Jacobs

entitled to the land by descent, was by recurring to the lineal ancestors of the intestate, who, though incapable of succeeding to the estate, are the common stock from which the next successor must spring. Another object was to make the brothers and sisters of the half blood inheritable in certain cases. If the land vested in the intestate by purchase, which was not derived from or through any of his ancestors, the brothers and sisters of the half blood of the intestate acquired a capacity of inheriting the land in derogation of the principle of the common law. To make them thus capable, two things or circumstances must concur. The land must vest in the intestate by purchase, and that purchase must not be derived from or through any of his ancestors; the general assembly intending that the course of descent previously established should not be interrupted if the purchase was derived from or through any of his ancestors by will, gift or otherwise, and creating a capacity of inheriting in the brothers and sisters of the half blood in all cases of purchase, except in those in which the land was acquired by the intestate from some one of his ancestors. In all other cases, to ascertain who is the heir, resort must be had to the father, grand-father, &c. as the heir, though long since dead, being represented by the persons of his issue, who succeed, not in their own right, but in right of representation as his offspring. The court are of opinion, that the uncles and aunts of the whole blood of the intestate, *Dorsey Jacobs*, are entitled to the lands in question, and that judgment be entered for the plaintiff for possession and costs.

Upon that judgment the defendant brought a *writ of error* returnable to this court.

The cause was argued at the last June term before Bu-chanan, Nicholson, Earle, and Martin. J. by *Shaaff* and *Stephen* for the plaintiff in error, and by *Martin* for the defendant in error. It was reargued at the present term before Buchanan, Earle, Martin and Dorsey, J.

*Stephen*, for the Plaintiff in error. The question is, whether upon the death of *Dorsey Jacobs*, (one of the three devisees named in the will of *Richard Jacobs*,) without issue, or a brother or sister of the whole blood, or descendant of such brother or sister, the lands devised to him, and his brother *Joseph*, and sister *Rachel*, (both of whom died in *Dorsey's* life time, without issue,) belongs to the brother of *Dorsey* of the half blood on the side of the mother, (the defendant below.) or to the uncles and aunts on the part of the father, (the lessors of the plaintiff.) The act of descents, (1786, *ch.* 45,) in the first place provides a course through which land shall go, where it *descended* to the intestate on the part of the father, giving a preference to paternal relatives, until the paternal line is exhausted; in that event it directs that the land shall go to the mother, and her

1817.

Hall
vs
Jacob

descendants. It provides in the same manner for the case of land descending to the intestate, on the part of the mother, giving the same preference to the maternal line, as had before been established in favour of the paternal, where the land descended on the part of the father; and ultimately directs, that when the maternal line is exhausted, the land shall go to the father and his descendants. The reason of this principle of preference is manifestly founded upon the superior right or title of that line of ancestors from whom the land *descended*. But where the estate, (as in this case,) was vested in the intestate by *purchase*, and not derived, (as we contend was meant by *descent*,) from or through either of his ancestors, if the intestate dies without issue, and without leaving a brother or sister, of the whole blood, or descendant of such brother or sister, the land of which he so died seized is directed to go, upon such a failure of the whole blood, to the brothers and sisters of the half blood. The land which is the subject of dispute in this case, was devised to *Dorsey*, *Joseph* and *Rachel*, as tenants in common, in fee; upon the death of *Joseph* and *Rachel* without issue, their two thirds became the property of *Dorsey*, as their brother of the whole blood, and consequently their heir at law. In virtue of what provision of the act of descents can the superior title of the lessors of the plaintiff be established or contended for? The act, it is true, has provided for their taking in a certain event; that is, if the land had *descended* to the intestate on the *part of the father*; in such a case they would have had the better title, because they are expressly preferred. But where the land vested in the intestate *by purchase*, the brothers and sisters of the *half blood* are to take upon the failure of brothers and sisters of the *whole blood and their descendants*. If then uncles and aunts are only to take in preference to the half blood, where the land *descended* to the intestate on the part of the *father* or the *mother*, unless this can be shewn to be *such a case of descent*, the defendant certainly has the better title. The words, "*and not derived from or through either of his ancestors*," have alone created any doubt in this case, they immediately following the expressions, "and if the estate is or shall be vested in the intestate by purchase," are supposed to qualify and explain the sense in which the word *purchase* was used, and to confine it to the common acceptation of that term, in contradistinction to its legal and technical acceptation. But this construction cannot be a correct one, because in the event of the death of the intestate to whom (as in this case,) land has been *devised* by the father, without issue, and without brothers and sisters of the *whole blood*, or descendants from such brother or sister, the uncles and aunts cannot establish their title under those provisions of the act which regulate the case of land *descended*. If then they cannot claim it as land which descended to the intestate, they must claim it as land which the intestate acquired by purchase in the technical sense of the ex-

pression. In the case of lands acquired by purchase in its ordinary sense, the half blood are expressly preferred, and if the expressions, "and not derived from or through either of his ancestors," are construed to exclude the right of the half blood in case of land *devised*, there is no provision in the law directing who shall take; for the lessors of the plaintiff cannot take it as land *descended*; and if they claim it as land acquired by *purchase* by the intestate, in the *technical sense* of the word, it will be found that the act of descents has not made any discrimination between lands acquired by *purchase* in the one sense or the other, in the establishment of its rules of descent; but has only provided for a case of descent or *purchase* in the large, general and comprehensive sense of the latter expression, preferring the uncles and aunts of the whole blood in the former case, and the brothers and sisters of the half blood in the latter. It appears that the true construction of the act of descents is this—that if the estate vests in the intestate by purchase, *or* is not derived from or through either of his *ancestors* by *descent*, that in such case the half blood is entitled, to the exclusion of the uncles and aunts, the word "*and*" should be construed "*or*," and then the provisions of the act will be plain, intelligible and complete. Upon any other construction, it is obvious that difficulties must arise as to the right of inheritance; for in this case the land, which *Dorsey* acquired upon the death of his brother and sister, cannot be said to have *descended* to him either on the part of the *father*, or on the part of the *mother*, his said brother and sister from whom, as purchasers, dying seized in fee, he took by descent, being the children and offspring, as well of the mother as the father; and it being a principle well settled at common law, that a descent from brother to brother is direct and immediate, and is not governed by any reference to the common parent as the *commune venculum*. To the brother and sister, who died in *Dorsey's* life-time, the half blood would have been heirs, if they had survived him, and had died without issue, because they took by purchase, and it is conceived that their dying in his life-time does not affect such right upon the true construction of the act of descents. If such a construction is not given to the words, "and not derived from or through either of his ancestors," what provision is made for the case of property descending from son to father, as may happen in the case of a purchase by the son, or where land descends from husband to wife on a failure of both paternal and maternal relatives? These cannot be called descents on the part of the *father*, or on the part of the *mother*. Where the words of a law are doubtful, the intention of the legislature is to be sought for. The intention here was to abolish the old and establish a new law of descents; of course to make provision for every case that could occur. No other construction than the one contended for by the plaintiff in error, can work this effect. By this construction every case, not a *paternal* or *maternal*

1817.

Hall
vs
Jacobs

*descent*, will be governed by the same rules as a case of *purchase.*

*Martin*, for the defendant in error. The question in this case is, Whether the lands in dispute descend to the uncle and aunts, or to the half brothers and sisters of the intestate? Of two thirds of the land *Dorsey Jacobs* was seized by descent, from his brother and sister, *Joseph* and *Rachel*; and of the other third he was seized of it under the devise of his father. On behalf of the plaintiff below it is contended, that the two thirds which so descended from *Joseph* and *Rachel*, the brother and sister of *Dorsey*, are to be considered as descending from them on the part of the father, and therefore, on the death of *Dorsey*, the two thirds descended to his uncle and aunts, the children of his grand father. To establish this claim it will be necessary to consider the law of collateral descent. When feuds first began to be hereditary, the rule or qualification requiring that the heir, who should succeed, must be of the blood of the first purchaser, that is, lineally descended from him. If a vassal died seized of his own acquisition, which was called a *novum feudum*, it would not descend to any but his own offspring, not even to his brother. 2 *Blk. Com* 220, 221. But if it was an *antiquum feudum*, a feud not acquired by himself, but which had descended to him from his ancestors, then his brothers and sisters, or any other collateral relation who descended, or derived his blood from the ancestor that first acquired the feud, might inherit or take by descent. 2 *Blk. Com.* 221. At length the feudal rigor was so far abated, that a method was invented to let in the collateral relations of the original grantee, by granting the *novum feudum* to be held *ut antiquum*, and then when the lineal descendants failed, you were obliged to look for the collateral relation, who was entitled to inherit, in the same manner as formerly, when the feud had been really *antiquum*, and had been acquired so long time past, that it was no longer known who was the ancestor, to whom the grant had originally been made. And as in those cases it could not be ascertained whether that ancestor was a male or female, the law supposed any of his ancestors, (as the case might require,) to have been the first purchaser or grantee, and therefore admits any collateral relation, so long as there shall be any descending from any ancestor, male or female, to inherit, only preferring the male as being most worthy of blood. 2 *Blk. Com.* 221, 222. When it is known, that is, when it can be traced to the ancestor who first acquired the feud, the strict rule of the feudal law is observed; but when, through lapse of time, the ancestor, who first acquired the feud, cannot be traced, then for want of lineal descendants of the person dying seized, to find what collateral relation shall inherit, we must go up to the father, and examine whether the father hath left any descendants living, and such descendant, as would

be heir to the father, is the collateral relation entitled to in-herit. If there is no descendant from the father, we must as-cend to the grand-father, and examine whether he hath left any descendant living, and if more than one, which would be the heir of the grand-father, he being the descendant, who is entitled to inherit as collateral heir of him who died seized. But if there is no descendant of the grand-father, we must still ascend to the great-grand-father, to inquire for his descendants, and if none, we must ascend up to the great-great-grand-father, and so on in *infinitum*, and when we can no longer trace a male ancestor, we must begin with the female, and look for the collateral heir in that line. 2 *Blk. Com.* 222 *to* 225, *and* 226. In all these cases, the descendant of the father takes as heir of the fa-ther, on the supposition that the land had descended through the father, and that he had once been seized of it. The descendant of the grand-father, in like manner, takes it as heir of the grand-father, on the supposition that the feud once belonged to the grand-father, and had descended from him. In like manner the descendants of the great-grand-father take, and so on as far as the ancestral descendants can be traced. 2 *Blk. Com* 226. To apply these prin-ciples to the present case—When *Joseph* and *Rachel* died, they left no lineal descendants—we therefore must go to their father, and see if there was any of his descendants living. We find that he left a son, *Dorsey Jacobs. Dor-sey* then is their collateral heir, and inherits, and the reason he inherits is, because the father is supposed to have been once seized of the land, and that it descended from him. Hence, therefore, *Dorsey Jacobs* was, in construction of law, seiz-ed of that two thirds as of land descending to him "on the part of the father." Such would be the result had either *Joseph* or *Rachel* alone been seized of the two thirds un-der the will, or had they both died at the same moment. The result is the same, though each held only one third, and supposing them to have died in succession. For in-stance, suppose *Rachel* died first, then in consequence of the change made by our law of descents, *Joseph* inherited from *Rachel* one sixth of the lands devised, and *Dorsey* the other one sixth. *Joseph* then was seized of three sixths of the land, of two sixths by the devise, and of one sixth in consequence of *Rachel's* death, which one sixth he is con-sidered to have taken by descent on the part of the father, for the reasons already assigned. *Dorsey* was also seized of three sixths, two sixths under the devise, and one sixth in consequence of *Rachel's* death, and that he took as de-scending "on the part of the father." When therefore *Jo-seph* died, the three sixths, of which he was seized, de-scended to *Dorsey*, as *on the part of the father*, so that he was ultimately seized of the whole, being seized of two sixths by the devise; of one sixth, which descended from his sister, as on the part of the father; and of three sixths, which descended to him by the death of *Joseph*, as on the part of the father. And the same would be the result if

*Joseph* had died first, and *Rachel* afterwards had died in the life of *Dorsey*. Thus we conclude that *Dorsey* died seized of two thirds of the land, the same having descended to him "*on the part of the father*," according to the true construction of the act of assembly; in which case it follows, of course, the plaintiff below was entitled to two thirds of the land. As to the other third part, which was devised to *Dorsey Jacobs* by the will of the testator, whether the plaintiff or defendants below are entitled to that must depend on the true construction of the following clause in the act of 1786, *ch*. 45: "And if the estate is or shall be vested in the intestate by purchase, and not derived from or through either of his ancestors," &c. The word "purchase" has two senses or significations. In its largest or most extensive sense, *Littleton* defines it "the possession of lands and tenements, which a man hath by his own act or agreement, and not by descent from any of his ancestors or kindred." Hence, if lands are given or devised to a person, he is said in this extensive sense, to take by purchase, because he must give his assent to the gift or devise to make it valid. 2 *Blk. Com.* 241. *Co. Litt.* 18. *Emerson vs. Inchbird,* 1 *Ld. Raym.* 728. But the word "purchase" in its vulgar sense, is applied only to such acquisitions of land as are obtained by bargain and sale for money, or some other valuable consideration. 2 *Blk. Com.* 241. And certainly every person, but a lawyer, would think it very absurd that it should be said a man had purchased a plantation, a negro, or any other thing, which had been freely given to him or devised to him. If the word purchase in this act is to be taken in its largest and most extensive sense, and perhaps had it been unaccompanied by any other words it ought to have been so taken, that third of the property would undoubtedly descend to the half blood. But it appears that the word purchase *here* is not meant to be taken in its largest and most extensive sense, but to a certain degree in its vulgar and confined sense; and that the words "and not derived from or through either of his ancestors," meant so far to restrain the extensive sense as to prevent its extending to a free gift, or a free devise of land, from an ancestor. A free devise is where the devisee is to take the land without paying any consideration for it. It cannot be said that by the words "not derived from or through either of his ancestors," no more is meant than "not descended from either of his ancestors." The word "*derived*" has a more extensive sense than the word "*descended*." Lands are "*derived*" from an ancestor, it is true, which have *descended* from him, but so are lands *derived* from an ancestor, which *are given by him*; so also those which are *devised by* him. Lands may be derived from an ancestor by descent, by gift, and by devise. Had the legislature by the words "and not derived," meant the same only as "not descended," as in the former part of the law, they had provided how lands, which had descended on the part of the paternal ancestor, should go, and who should take, when the lands descended from

1817.

Hall
vs
Jacobs

the maternal ancestor, they would have gone on and said, "And if the estate *is* or shall not be vested in the intestate by descent from either of his ancestors, then," &c.　This would have left no ambiguity; or if they had intended the provision to have extended to all kind of purchases, in its most extensive signification, they certainly would have used the expressions, "And if the estate is or shall be vested in the intestate by purchase;" and have omitted the additional expressions, "and not derived from either of his ancestors." It cannot be conceived that there should be any reason for the use of these expressions, "and not derived from or through either of his ancestors," except that it was their intention to restrain the most extensive sense of the word "purchase," so as to exclude therefrom gifts and devises of land made by him.　And it appears reasonable that those cases should be excepted from the provision which entitles the half blood to inherit; and that the same collateral relations should inherit lands of which the intestate was seized by the gift or devise from the ancestor, who would have inherited had the intestate been seized by descent from the ancestor.　No consideration had passed to the ancestor, nor had his estate, in which those collateral heirs were interested, been increased or benefited in one case more than in the other.　Why then should not those collateral heirs have the benefit of the land on the intestate's dying seized without issue, in the one case as in the other? On the other hand, as no consideration was given by the intestate for this land, and consequently that estate is not diminished or lessened, to which collaterals of the half blood have a right to succeed, and in which they are interested, and of course they are no ways injured—why should they be benefited by this property so devised, at the expense of those collaterals, who would have been entitled to it, had it descended to the intestate instead of being devised to him?　Such appears to be the true construction of that clause, and the reason which induced the legislature to make the provision.　If these ideas are correct, then *Dorsey Jacobs* was seized of that third part by purchase, but not by such purchase as that clause operates on--and being seized by purchase, we must look for the collaterals that shall inherit, by going up to the father of *Dorsey Jacobs*, and seeing if he has left descendants, if he had they would inherit, but as we find no descendant from him living, we must go up to the grand-father of *Dorsey Jacobs*, and we find that the lessors of the plaintiff are his descendants, and they are therefore the collaterals who are entitled to the land.

Buchanan, J. delivered the opinion of the Court.　It appears from the case stated, on which the judgment of the court below was founded, that *Richard Jacobs*, son of *Joseph*, in the year 1783, died seized in fee of the land for which this suit was brought, having first made his last will and testament, whereby he devised it

in fee to his three children, *Joseph Jacobs, Dorsey Jacobs,* and *Rachel Jacobs,* as tenants in common; that after the death of the testator, sometime in the year 1800, *Joseph* and *Rachel Jacobs,* two of the devisees named in the will, died seized in fee of two thirds of said land, intestate and without issue, which two thirds thereby descended to *Dorsey Jacobs,* the other devisee in the will mentioned, who being seized in fee of the whole of the land, died sometime in the year 1803, intestate and without issue, leaving no brother or sister of the whole blood, or descendant of such brother or sister, but leaving three brothers and two sisters of the half blood, to wit, *John Hall,* the defendant in the court below, *Daniel Hall, Richard Jacobs Hall, Elizabeth Hall* and *Sarah Hall,* now *Sarah Cromwell,* children of his mother by a second marriage, and also an uncle and two aunts, who are the lessors of the plaintiff, to wit, *John Jacobs,* the brother of the whole blood to his father *Richard Jacobs,* the testator, and *Elizabeth Walker* and *Hannah Fowler,* his father's sisters of the whole blood. And the question for consideration is, to whom did the land descend on the death of *Dorsey Jacobs*—to his brothers and sisters of the half blood—to his uncle and aunts of the whole blood on the part of his father equally, or to his uncle *John Jacobs* alone, to the exclusion of his two aunts *Elizabeth Walker* and *Hannah Fowler?* And this must depend upon the provisions of the act of assembly of this state, entitled, "An act to direct descents," 1786, *ch.* 45, *Joseph, Rachel* and *Dorsey Jacobs,* having all died since the passage of the act. It no where appears whether *Joseph* or *Rachel* died first, but that is not material, the result is the same. *Dorsey Jacobs* became seized in fee of the whole of the premises in the declaration mentioned, one third by purchase under the will of his father *Richard Jacobs,* and the other two thirds by descent from his brother and sister *Joseph* and *Rachel,* under the operation of the act of descents. As to the one third of the land which *Dorsey Jacobs* acquired under the will of his father, it is contended, that though it was vested in him by purchase in technical understanding, yet that it was not such an estate by purchase, in the meaning of the act of descents, as can descend to his brothers and sisters of the half blood. The act, after providing a course of descents for estates descended to an intestate on the part of the father, and also for estates descended on the part of the mother, has this provision: "And if the estate is or shall be vested in the intestate by purchase, and not derived from or through either of his ancestors, and there be no child or descendant of such intestate, then the estate shall descend to the brothers and sisters of such intestate of the whole blood, and their descendants, in equal degree equally; and if no brother or sister of the whole blood, or descendant from such brother or sister, then to the brothers and sisters of the half blood, and their descendants, in equal degree equally," &c. And it is said.

that the word "*purchase*," as here used, is not to be taken in the full extent in a technical or legal sense, but must be considered so far restrained by the subsequent words, as not to embrace estates acquired by deed or devise from an ancestor; and the opinion of the court below goes upon the ground that the words, "and not derived trom or through either of his ancestors," were used to qualify and limit the words "vested by purchase," and to distinguish an estate by deed or devise from a parent or other ancestor, from all other descriptions of purchase. And if that construction of the act of assembly be right, the lessors of the plaintiff are not entitled to recover in this action, for it is manifest that the one third of the land which went to *Dorsey Jacobs* under the will of his father, was not derived by descent, but was an estate by purchase, and is not therefore within that branch of the act which directs the manner in which lands shall pass from an intestate that came to him by descent; and if an estate acquired by deed or will from a parent, or other ancestor, is not an estate by purchase, within the meaning and intention of the act, and cannot for that reason pass by descent from the purchaser to his brothers and sisters of the half blood, it is a description of estate not provided for by the act, and must go as at common law. Hence it would follow, not only that the brothers and sisters of *Dorsey Jacobs* of the half blood would not be entitled to inherit the one third of the land so acquired by him, but that *John Jacobs*, one of the lessors of the plaintiff, would take it as heir at law to *Dorsey Jacobs*, to the exclusion of his sisters, *Elizabeth Walker* and *Hannah Fowler*, the other lessors.

But such a construction cannot prevail. The act of assembly employs throughout the technical terms *seized, descent, purchase*, which must be understood in their legal sense. An estate by purchase is one acquired by sale or gift, or by any other method, except only that of descent. The law knows no such distinction, as is here set up, between a gift or devise by a stranger, and a gift or devise by an ancestor, and there is nothing in the act of assembly to warrant us in sustaining it. It would seem like bending the law to the particular case, rather than the case coming within the provisions of the law.

The legislature have used the words, "and not derived from or through either of his ancestors," to explain their meaning of the word "purchase." In doing this they have borrowed the language of the common law, and it is difficult to suppose that they intended to change the legal import of the term by adopting the legal definition of it. Without using the term "descent" or "descendant," no set of words could be selected better suited to the purpose of describing an estate by descent than the words "derived from or through an ancestor," the term "derived" being properly applicable to a case of descent, and the word "through" of necessity implying it, since a purchase cannot be through any one. The words "and not derived

from or through either of his ancestors," can therefore only be taken to mean, "and not by descent," leaving the word "purchase" to be understood in its technical and most comprehensive sense, and the whole clause to be construed as if, instead of the words "by purchase, and not derived from or through either of his ancestors," the language employed was by purchase, and not by descent. In this view of the subject, the estate which was vested in *Dorsey Jacobs*, by purchase under the will of his father, is embraced by the act of assembly, and on his death descended to his brothers and sisters of the half blood. With respect to the two thirds of the land which were vested in *Joseph* and *Rachel Jacobs*, by purchase, under the will of their father *Richard Jacobs*, there appears to be more difficulty. Whatever the intention of the legislature may have been at the time of the passage of the act of descents, it is very clear that they have not in terms provided for more than three classes of cases; *first*, estates descended to the intestate on the part of the father; *secondly*, estates descended to the intestate on the part of the mother; and *thirdly*, estates vested in the intestate by purchase, and not derived from or through either of his ancestors. And there being no other cases provided for, if this case does not fall within either of these classes, it is not embraced by the act, and cannot descend either to the brothers or sisters of *Dorsey Jacobs* of the half blood, or to the lessors of the plaintiff equally. To which then, (if to either,) of these three specified classes does it belong? Is it an estate by purchase? In a technical sense it certainly is not; nor is it in vulgar understanding. It is not therefore embraced by the third branch of the act, which provides for estates "vested in an intestate by purchase, and not derived from or through either of his ancestors," unless that clause can be understood to mean that every acquisition of lands, except by descent, paternal or maternal, shall be held and considered to be an estate by purchase. The general intent of the legislature may often be gratified by construction, where the expressions used are of doubtful meaning, but never when it cannot be done without manifest violence to both the ordinary and legal import of the terms employed. Had they expressly declared that all estates, except those by descent on the part of the father or mother, should be deemed estates by purchase, though that would be giving to the word *'purchase"* a signification not before known to the law, yet it would govern all estates coming within that legislative description. But they have not said so in terms, and there is nothing in the whole clause from which such an intention can be inferred; and to give it such a construction, contrary to the obvious meaning of the words, whether technically or vulgarly understood, merely upon the supposition that it was not the intention of the legislature to exclude from the operation of the act any description of estate, and because no other provision of the act could be found to embrace it, would be arbitrary and dan-

1817.

Hall
vs
Jacobs

gerous, and at variance with every known rule of construction. If it was the intention of the legislature to provide in the third clause by the description of "estates vested by purchase," for all estates not descended *ex parte paterna* or *ex parte materna,* they have not made use of words to effectuate that intention, and a court of law cannot supply the omission. Nor is it believed that they intended that clause to have such operation. It is not therefore an estate that vested in the intestate by purchase, and did not descend to the brothers and sisters of *Dorsey Jacobs* of the half blood; and it is equally clear that it is not an estate which descended to the intestate, either on the part of the father or on the part of the mother, and is not within either of the two classes of cases first specified, and could not therefore descend to the lessors of the plaintiff equally. But it was vested in *Dorsey Jacobs* by immediate descent from his brother and sister *Joseph* and *Rachel,* a course of descent expressly directed by the act of assembly in the case of a purchaser, who dies intestate, leaving no child or descendant, and is known also at common law. This then being neither the case of an estate descended to the intestate on the part of the father, an estate descended to the intestate on the part of the mother, nor an estate by purchase, but a descent from brother to brother, it is not within the act of assembly, and is a *casus omissus,* subject to the rules of the common law governing descents. The lessors of the plaintiff cannot therefore take it by descent equally, which they could only do had it been vested in the intestate by descent *ex parte paterna.* By the common law, if a man purchases land, he is by fiction understood to hold it *ut feudum antiquum,* not as land descended either *ex parte paterna* or *ex parte materna,* for the law will not ascertain it, but as an estate derived to him from some unknown ancestor; and if he dies intestate and without issue, it will go first to the heirs on the part of the father, and on failure of such heirs, then to the heirs on the part of the mother, the males being always preferred to the females, and amongst males the right of primogeniture prevailing. And so in this case, the land in question having passed by immediate descent to *Dorsey Jacobs,* from his brother and sister, *Joseph* and *Rachel,* who acquired it by purchase, on his death intestate and without issue, leaving no brother or sister of the whole blood, it descended to his uncle *John Jacobs,* the brother of his father of the whole blood, to the exclusion of his two aunts, *Elizabeth Walker* and *Hannah Fowler.*

JUDGMENT REVERSED. *(a)*

*(a)* See *Stewart's Lessee vs. Evans,* 3 *Harr. & Johns.* 287.