RICHARD ROE, LESSEE OF JOHN V. POSEY, *vs.* JOHN DOE AND
JOHN L. BUDD.

ACTS OF 1786, CH. 45,—1820, CH. 191: ESTATES TAIL GENERAL: ESTATES
BY DESCENT AND ESTATES BY PURCHASE.—Estates tail general being con-
verted into estates in fee-simple by operation of the acts to direct descents,
a devise creating such an estate in the heir at law does not break the de-
scent, but he takes as heir at law by descent and not by purchase; and in
default of lineal heirs, the estate descends to the heir on the part of the
ancestor from whom it was derived.

APPEAL from the Circuit Court for Charles County :

*Action of Ejectment* by the appellant against the appellee.
Mrs. Anne R. Saxton by her will made in 1858, devised
certain land to her son and only child, Joseph A. Posey,
"and the heirs of his body lawfully begotten," with a void
limitation over. Joseph A. Posey died without ever be-
ing married and intestate, leaving the appellant John V.
Posey, his *paternal* half brother, and the appellee John L.
Budd, his *maternal* uncle. The former brought an action
of *ejectment* to recover the land, and the verdict and judg-
ment being against him, has taken the present appeal. The
facts of the case are more fully stated in the opinion of
this Court.

The cause was argued before BOWIE, C. J., and GOLDS-
BOROUGH, and COCHRAN, J.

*Thomas G. Pratt* and *William H. Tuck*, for appellant :

Jos. A. Posey by this will took an estate tail in the land
thereby devised, and consequently as devisee or purchaser,
and not as heir at law; that the Acts of 1786, ch. 45, and
of 1820, ch. 191, do not relate back to the original taking
under the devise, but that their office is to make *the estate
tail taken under the devise*, descendible in fee; that a tenant
in tail always takes *per formam doni*, always by purchase,
never by descent; and that the continued existence of es-
tate's tail being recognised by all of the Acts of Assembly

which refer to such estates, and by all the decisions of the Appellate Court in which they are treated of, it will follow that Joseph A. Posey took the land in controversy by purchase and not by descent; that they will descend in fee to his heirs under the provisions of the Act of 1820, in reference to the descent of land acquired by purchase, and, as a consequence, that they will descend to the appellant as half-brother.

1st. Do the Acts of Assembly recognise the continued existence of estates tail? The Acts of 1786, ch. 45, and of 1820, ch. 191, both provide that where any person seized of an estate in lands in fee tail general, shall die intestate thereof, they shall descend, &c. The only difference between the Act of 1820, and the Act of 1786, is, that the Act of 1820 declares that where persons shall die intestate, seized of an estate in fee tail general, such lands shall descend in fee, &c. The Act of 1798, ch. 101, in declaring what estates may be devised, excepts estates tail. The Act of 1782, ch. 23, gives the tenant in tail the power to carry estates tail by deed. The Code, Article 93, sec. 298, page 684, provides that all hereditaments which might pass by deed, may be devised, except estates tail. Code 330, 336, sec. 24, pages 19, 28.

2nd. The decisions of this Court recognise the continued existence of estates tail. *Edelen vs. Middleton,* 9 *Gill,* 161, 168. *Weems vs. Hatton,* 12 *G. & J.,* 84, 107. *Medley vs. Williams,* 7 *G. & J.,* 61. *Smith vs. Smith,* 2 *H. & J.,* 314.

3d. The position for which we contend, set: that John A. Posey took by purchase, does not conflict with the requirement of the Act of 1820, "that such estates shall descend in fee;" we insist that they do descend in fee, but to the heirs of Joseph A. Posey, and not to the heirs of his mother; that they descend, not under the first clause of the first section of the Act of 1820, but under the subsequent clause of the same section, which provides for the descent of estates acquired by purchase; that this construction of

the Act does not conflict with any decision of the Appellate Court, and will reconcile those which are apparently in conflict. Act 1820, ch. 191, sec. 1. *Newton vs. Griffith*, 1 *H. & G.*, 111. *Edelin vs. Middleton*, 9 *Gill*, 161, 168. *Weems vs. Hatton*, 12 *G. & J.*, 84, 107. *Ridgely vs. Bond & Wife*, 18 *Md. Rep.*, 449. *Gilpin vs. Hollingsworth*, 3 *Md. Rep.*, 190. *Medley vs. Williams*, 7 *G. & J.*, 61. If tenants in tail are recognized by the Courts and Legislature, the estate is different from a fee-simple. One is an estate by *purchase*, or *per formam doni*, the other by *descent*. In *Jones vs. Jones*, 2 *H. & J.*, 284, it was decided, that a deed executed by tenant in tail on the 13th July 1797, to dock the entail, could not be recorded after the death of the tenant in tail to the prejudice of the heirs in tail, because they took *per formam doni*, and the case was not within the operation of the Act of 1785, ch. 72, the issue in tail being neither heir, devisee, executor or administrator.

*Robert J. Brent* and *Vivian Brent*, for the appellee:

If the *limitation over* of the estate devised to "Joseph A. Posey, and the heirs of his body," is not too remote *quoad* the real estate, then the judgment below must be affirmed, as the plaintiff has shown no title under that will. But on the hypothesis that the limitation over by way of executory devise is void, the question is to be considered, what estate was vested in the testatrix' only child, Joseph A. Posey?"

We contend that as he was her only descendant, he took under that will, the same real estate in quantity and in quality, that he would have taken if she had died intestate, and therefore he takes by descent, as the worthier title. It is not like the case of *Gilpin vs. Hollingsworth*, 3 *Md. Rep.*, 190. At common law he would have taken an estate tail, but inasmuch as such estates are *ipso facto*, and for all practical purposes, converted by operation of law into fee-simple estates, it results that the estate still *de-*

scended to Joseph A. Posey in fee, and on his death, without issue and intestate, it devolves on John L. Budd the appellee, who was his nearest relative on the part of the testatrix. *Newton vs. Griffith*, 1 *H. & G.*, 132. *Wells vs. Beale*, 2 *G. & J.*, 458. *Hill vs. Hill*, 5 *G. & J.*, 95. *Hatton vs. Weems*, 12 *G. & J.*, 107. *Tongue vs. Nutwell*, 13 *Md. Rep.*, 424. *Phillips vs. Dashiell*, 1 *H. & J.*, 478. *Medly vs. Williams*, 7 *G. & J.*, 60. The Act of 1820, ch. 191, sec. 1, more effectually confounds estates tail with fee-simples, than did the old Act of 1786, ch. 45. By the Act of 1820, ch. 191, the fee-simple vested in Joseph A. Posey, descended to John L. Budd, his next heir on the part of the mother, from whom the estate descended.

Bowie, C. J., delivered the opinion of this Court:

The principle of the common law, that a will, devising an estate in land of the same quality and quantity, to a person, who would take the same as heir at law, shall not operate so as to break the descent, but the heir shall take as heir, and not as devisee, that being the worthier title, was early recognised and adopted in this State. *Phillips vs. Dashiell*, 1 *H. & J.*, 478. Where parties claim adversely as collateral heirs at law, to a *propositus*, who died seized of lands derived from an ancestor, under these circumstances the question, whether he took by purchase or by descent, is necessarily first to be ascertained, as the line of descent is controlled by the source or manner of his tenure.

John A. Posey, the decedent and *propositus* in this case, was the only son and child of Mrs. Anne R. Saxton, who inherited the land in question from her father, and by her will, dated the 21st of December 1858, and proved the 26th July 1859, devised the same as follows:

"I will and devise unto Joseph A. Posey, my *son*, my plantation whereon I now dwell, and all of my personal estate as it now stands on said plantation, also a legacy by the will of my uncle, which I shall be entitled to at the

death of my aunt Masse Budd, to him, the said Joseph A. Posey, and the heirs of his body lawfully begotten; should Joseph A. Posey die without heirs, or heir of his body lawfully begotten, I will and bequeath all my estate, both real and personal, to the children of John L. Budd, in equal proportions, share and share alike; should John L. Budd have no children, from and after his death, I will and bequeath all my estate real and personal, in trust, to Benedict Joseph Lancaster, for the support of the New-Port Catholic Church." Joseph A. Posey died in October 1860, unmarried and intestate, leaving no brother or sister, or descendant of brother or sister, except the plaintiff's lessor, who was a half-brother by the same father. The defendant is the brother of Anne R. Saxton, by the same father, from whom the lands descended to said Anne, who left no other heir on her father's side. Which facts being in proof, the defendant offered the following prayer: "If the jury find from the evidence that Anne R. Saxton died in 1859, seized and possessed of the lands in controversey, in fee-simple, having inherited the same from her father, and leaving surviving her, Joseph A. Posey, and that he was her sole issue at the time of her death; and if the jury further find that the said Joseph A. Posey died in October 1860, intestate and without issue, leaving no brothers or sisters, or descendants of brothers or sisters except the plaintiff's lessor, who was a brother of said Joseph A. Posey of the half blood on the part of the father of the said Joseph A. Posey; and if the jury further find that at the death of the said Joseph A. Posey, his maternal grand-father, John Budd was dead, and the defendant, John L. Budd, was the sole descendant of said John Budd, and brother of said Ann R. Saxton; then the said land descended from the said Ann R. Saxton, to her said son Joseph A. Posey, and at his death the title to the same did not vest in the plaintiff's lessor, and the verdict of the jury must be for the defendant, notwithstanding the jury may find the due execution of the will of said Ann R. Saxton, as read in evidence;"

which prayer was granted, and to the granting of which, the plaintiff excepted, and prayed this appeal.

The appellant's contend, that John A. Posey took an estate tail under the will of his mother, and being in by purchase, upon his death intestate and without heirs of his body, the limitations over being too remote, the lands descended in fee to the heirs of Joseph A. Posey, on the part of his father, and not to the heirs of Joseph A. Posey's mother, or his heirs on the part of his mother.

The appellees maintain the converse of this proposition.

The appellant's insist that the existence of estates tail general, is recognised by our Acts of Assembly, and decisions of our Courts, as distinct from estates in fee, and therefore a will devising an estate tail general, to an heir at law, does not confer on him an estate of the same quality and quantity, as that he would take as heir at law by descent.

The first instance of judicial recognition is, the case of *Jones' Lessee vs. Jones,* 2 *H. & J.,* 281, decided in 1803, by Chancellor Hanson, and affirmed by the Court of Appeals at June Term 1808. That was an application to the Chancellor by persons claiming under a deed executed by a tenant in tail on the 13th of July 1797, to admit the deed to record, after the death of the grantor, under the provisions of the Act of 1785, ch. 72, sec. 11. That Act provides, "that in case any deed hath been or shall hereafter be executed, to the validity of which recording is necessary by law, and such deed hath not been or shall not be recorded agreeably to law without any fraudulent design or intention of the party claiming under such deed, that the Chancellor shall have full power and authority, upon application of the party claiming under such deed, and summoning and hearing the party making such deed, his heir, devisee, executor or administrator, as the case may require, and being satisfied that the party claiming under such deed has a fair and equitable claim to the premises therein mentioned, to order and decree that such deed shall be recorded." The Chancellor said: "It has, on a former occa-

sion been determined by the General Court, on a case sub-mitted, that a deed executed by a tenant in tail and not recorded within six months, but recorded after the tenant's death, under a decree of this Court, should not operate against the issue in tail.   This being the case, the party claiming under the deed, has not a title to the land, and therefore the Chancellor conceives, that he cannot with pro-priety decree the recording of the deed.

The appeal was argued before CHASE, C. J., BUCHANAN, TILGHMAN, NICHOLSON and GANT, J.   The Chief Justice delivering the opinion of the Court said: "It is certainly an established principle, that the heir or issue in tail, claims the land '*per formam doni*,' and does not derive his title to it from the tenant in tail, who in respect of said land, is nothing more than the conduit pipe through which the title to the land is conducted to the issue in tail, whose claim to it is from the donor according to the gift. The land of the heir or issue in tail, is not liable for the debts of the tenant in tail, nor is he compellable to ex-ecute or fulfil any contract made by his ancestor for the sale or conveyance of said land." * * *   An estate tail is not within the Act of 1785, ch. 72, for recording deeds.

"The petition must be filed against the heir, devisee, executor or administrator of the grantor, and with respect to the land entailed the heir or issue in tail, is neither heir, devisee, executor nor administrator.   I have shown he can-not be considered as heir; if the land was devised to him by the tenant in tail, he would not take as devisee, but by a title paramount *per forman doni* which accrues *eo instante* of the death of the ancestor."   It does not appear from the proceedings in this case, when the estate tail referred to was created.

All the peculiarities of an estate tail, are certainly clearly pointed out, in contra-distinction to estates in fee-simple, without any intimation that the one had been merged in the other by the Act to direct descents, passed in 1786, ch.

45. The case referred to by the Chancellor in 3 *H. & McH.*, 220, decided at May term 1794, was declared to have been since considered as the law.

In the case of *Smith vs. Smith*, 2 *H. & J.*, 318, the Chancellor submitted to the opinion of Chase, C. J., of the third Judicial District, certain questions of law arising under the will of Wm. Crandell, and the Act to direct descents, (1786, ch. 45.) The Chief Justice certified, "that the true construction of that Act as to estates tail general, created and acquired after the commencement of it, is, that the course or manner of transmitting the tenancy in tail to the issue of the tenant, is altered or changed only by making the land descendible to *all* the children of the tenant in tail and their respective issue indefinitely, and not the eldest son, in the first instance, in exclusion of the other children. *It could not be the intention of the Legislature to abolish estates tail general or remainders limited thereon, and to convert them into fee-simple estates by giving them the same properties.*

The judicial recognition of estates tail stood thus, until the case of *Newton vs. Griffith*, decided at June term 1827, when a question arose upon the construction of the will of Joseph Griffith, dated the 6th of February 1792, and the Act of 1786, ch. 45, sec. 1. The testator devised certain lands to his two sons, Joseph and George, to them their heirs and assigns forever; and in case either of them should decease without lawful issue or heirs of his body, the surviving son to have his deceased brother's part, to him, his heirs and assigns forever; and in case both should decease leaving no lawful heirs of their bodies, then and in such case, I give and devise the lands devised as aforesaid, to my three daughters; George Griffith died without issue, leaving Joseph surviving, and Joseph died without issue, without leaving personal estate sufficient to pay his debts, leaving the three sisters surviving. The bill was filed against them to subject all the real estate of which Joseph died seized to sale, for payment of his debts.

The defendants claimed to hold under the will of Joseph the elder, by virtue of the limitation over to them, on the contingency of both their brother's dying without issue, and denied that any of the lands descended to them from Joseph the younger, as his heirs at law, and insisted they were not liable for his debts.

The Court held, "that construing this will according to the settled rules of contruction, Joseph and George Griffith, *as the law stood before the passage of the Act to direct descents*, took estates tail general, in the lands respectively devised to them, with cross-remainders, in tail general, remainder to Sophia, Sarah and Nancy Griffith for life."

"The next question is, whether any and what part of the lands so devised is liable for the debts of Joseph Griffith, the younger, which depends on the construction of the Act to direct descents, (1786, ch. 45.)" After expressing surprise that such a question should be open to discussion at this late day, and citing the provisions of the Act to direct descents then under consideration, they proceed. "Thus the course of descents of estates tail general, acquired after the commencement of the Act, *is entirely broken, the interest of the reversioner or remainderman destroyed,* and *the land made to pass by descent from the tenant in tail precisely, and in the very same course, as if he was a tenant in fee-simple.*" Commenting upon *Smith vs. Smith,* 2 *H. & J.,* and dissenting therefrom, the Court declare that restrictions upon the descent and alienation of lands in this State, were contrary to public policy, and the provisions of the Act to direct descents grew out of a disposition to remove them. In that spirit the Act to direct descents was passed, and by it all lands held in fee-simple and fee tail general, are directed to descend in one general uniform manner, without any distinction between the two kinds of estates, first to the child or descendants, and if no child or descendants, then to collaterals indefinitely. They declare that lands held in tail general created since the commencement of the Act to direct descents, being made by that Act

to descend precisely in the same manner as lands held in fee-simple, all such estates are thereby virtually abolished and converted into estates in fee-simple, drawing to such lands all the incidents to lands held in fee, among which is that of being liable for the debts of those who, before that Act, would have been tenants in tail. In conclusion it was held, that Joseph Griffith the younger, and George Griffith, *by operation of the Act to direct descents*, took virtually estates in fee in the lands devised to them respectively (by the will which construed as the law stood before that Act, would have created in them estates tail general) and on the death of George, Joseph and his three sisters surviving him, Joseph took one-fourth, by descent from him, which with the whole of the lands devised to him by his father, descended to his sisters, subject to the payment of his debts. Although *Smith vs. Smith* was over-ruled, it does not appear that *Jones' Lessee vs. Jones*, or *Ridgely vs. Ridgely*, was referred to.

This case establishes the doctrine that estates tail general are abolished since 1786, by operation of the Act to direct descents, so far as to destroy remainders limited on them, and to subject the lands to the debts of the tenant in tail and constitute those who would otherwise take *"per forman doni,"* heirs by descent. It also determines *arguendo*, that such estates are not only descendible, but devisable, having all the incidents of an estate in fee-simple. In the case of *Hill vs. Hill*, 5 *G. & J.*, 95, (1833,) it is said what would have been an estate tail general before the Act to direct descents, is by that Act converted into a fee-simple. So in *Tongue vs. Nutwell*, 13 *Md. Rep.*, 424. "A fee-tail in this State under an Act of Assembly amounts to a fee-simple."

The Acts of 1786, ch. 45, and of 1820, ch. 191, are identical in the language describing the estates in lands, which are the subject of descent, viz: "That if after the commencement of this Act, any person seized of an estate in any lands, tenements or hereditaments lying or being in

this State, in fee-simple, or fee-simple conditional heretofore or hereafter acquired, or of an estate in fee tail general, created and acquired after the commencement of this Act, shall die intestate thereof, such lands, tenements or hereditaments shall descend in fee-simple to the kindred male and female of such person in the following order. First, to the child or children and their descendants, if any, equally, and if no child or descendant, and *the estate descended to the intestate on the part of the father*, then to the father, &c. The same words it will be perceived are here used to describe the transmission of the estate in fee-simple and fee tail general from ancestor to heir, without distinction, implying that in both cases, the lands pass by descent and not by purchase.

The order of succession in default of lineal heirs, "when the estate descends on the part of the father," is first to the paternal line; "and if no paternal ancestor, or descendant from such ancestor, then to the mother of the intestate." "And if the estate descended to the intestate on the part of the mother, and the intestate shall die without child or descendant as aforesaid, then to the mother," or heirs of the maternal line, and in default of such heirs, then to the father or paternal line.

"If the estate is or shall be vested in the intestate by purchase, or shall descend to or vest in the intestate in any other manner than as heretofore mentioned," then the estate in default of lineal heirs, shall go to the brothers and sisters of the such intestate of the whole blood and their descendants, &c., and if no such brother or sister or descendant, then to the brothers and sisters of the half blood, &c.

The third class in the order of succession, in the Act of 1786, ch. 45, is described or qualified by the words, "and not derived from or through either of his ancestors," These words were construed to be equivalent to, "by descent," in the case of *Hall vs. Jacobs*, 4 *H. & J.*, 256, and not to

include lands inherited by one brother from another. *Vide* also *Stewart vs. Jones*, 8 *G. & J.*, 1.

The Act of 1820, ch. 191, to avoid all doubts and embrace all other possible modes of acquiring real estates, uses the words, "or shall descend to or vest in the intestate in any other manner than as heretofore mentioned."

The words, "descended on the part of the father," or descended on the part of the mother, with their attending provision, show an anxiety to preserve the line of descent, in the lineage from which the estates were derived. The same policy would induce the Court to lean to that interpretation of wills and of the Acts to direct descents, which would preserve to families the fruits of their own acquisitions.

The references to estates tail general in the Acts above quoted, are not with any design to preserve them, but rather to distinguish them from estates tail special, and other limited estates known to the law, and to declare that if they had not been disposed of by will, (an incident before entirely beyond the power of the tenant in tail,) they should descend as estates in fee-simple. Whether they should descend, as estates descended on the part of the father, or estates descended on the part of the mother, or "as estates vested in the intestate by purchase, or in any other manner than as heretofore mentioned," was left to legal construction upon the facts of each particular case. The exception of "estates tail," in the Act for amending and reducing into one system the laws and regulations concerning last wills, (1798, ch. 101,) applies to those estates created anterior to the Act of 1786, ch. 45, as well as to estates tail special, and strange to say, includes them among lands which, "in case of the proprietor's dying intestate, descend to or devolve on his or her heirs or representatives." It must be confessed that in the acts to direct descents, and the Act known as the Testamentary System these words, "estates tail" are used rather ambiguously and without technical exactness.

Although the parties in *Newton vs. Griffith,* were not as in this case, persons claiming through different lines of ancestors, but creditors seeking to charge the lands with the debts of the *propositus*, on the one hand, and persons claiming in remainder under the will of George Griffith, Senior, yet the question, whether the land was vested in the *propositus*, by purchase or descent, was necessarily involved and decided after great deliberation; the majority of the Court concurring in the very elaborate opinion of the Chief Justice above quoted, and Justice Stephen, in a very lengthy and learned opinion, presenting many of the points now relied on by the appellants, dissenting. If the main question were not so solemnly decided and repeatedly recognized, we should hesitate in coming to a conclusion, but regarding certainty in the construction of the law as essential to security in estates, we are constrained to adopt the conclusion that estates tail general being converted into estates in fee-simple, by operation of the Acts to direct descents, a devise creating such an estate in the heir at law, does not break the descent, but he takes as heir at law by descent and not by purchase, and in default of lineal heirs, the estate descends to the heir on the part of the ancestor from whom it was derived.

*Judgment affirmed.*

(Decided June 1st, 1864.)