ANN E. JOSETTI, and others *vs.* JOHN FRANCIS MC-
GREGOR.

*Testamentary construction—An estate tail—Rule in Shelly's
Case—Construction of the words "then and in that case"—
Estate tail general converted into an estate in Fee Simple—
Statute to direct descents—Void devise—Indefinite failure of
Issue—Contingency too remote.*

A. B. made a will in 1817, whereby she devised as follows: "I give, devise
and bequeath to my granddaughter, A. E. E. B., my dwelling plantation,
called 'Berry's Grove,' lying and being in Prince George's County, to her,
the said A. E. E. B., *and the heirs of her body lawfully begotten;* and in case
the said A. E. E. B. *should die without issue of her body lawfully begotten,*
then and in that case I give, devise and bequeath my said dwelling planta-
tion unto my grandson E. B., and to the heirs of his body lawfully begotten
forever." The claim in the present action was based upon the limitation
over after the failure of heirs of the body of the said A. E. E. B., and was
resisted on the ground that said limitation over was void because too re-
mote. HELD :

1st. That the law is well settled that a devise to a person, and the heirs of his
body lawfully begotten, creates an estate tail in the first taker, by operation
of the rule in *Shelly's Case;* and it is equally well settled that a devise over,
dependent upon an indefinite failure of issue of a prior devisee, is a contin-
gency too remote to support a valid executory devise.

2nd. That the words *"then and in that case,"* used in making the devise over
dependent upon the failure of issue of the first devisee, were not to be con-
strued as limiting the contingency of failure of issue to the time of the
death of the first devisee.

3rd. That A. E. E. B. the first devisee, took by the devise to her an estate tail
general, which, by operation of the statute to direct descents, was con-
verted into an estate in fee simple; and that therefore, the devise over to
E. B. being after an indefinite failure of issue of the first devisee, was void,
because on a contingency too remote.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court. An exception was taken by the plaintiffs to the ruling of the Court, (BRENT, C. J. and FORD, J.,) upon the prayers. It is not deemed necessary to set out the prayers. A verdict was rendered for the defendant and a judgment was entered in his favor for costs. The plaintiffs appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*C. C. Magruder, Jr.* and *Alex. B. Hagner,* for the appellants.

Conceding that Ann Eleanor Eversfield took an estate tail instead of an estate for life, under the will, and that the estate tail was converted into an estate in fee by the statute, the question for decision is, whether the devise over to Elisha Berry, "*and to the heirs of his body lawfully begotten, forever,*" after the death of Ann Eleanor, "without issue of her body lawfully begotten," is void for remoteness. It is insisted upon the part of the appellants that such is not the case.

The Court in determining this question, will examine the entire will, and apply to its construction the liberal principles applicable to this favored class of instruments. The cardinal principles of construction require the Courts to search throughout the will, to find *the intention of the testator;* and to give effect to that intention, disregarding mere technical rules, and all parts of the will must be considered in arriving at the meaning of the particular clause; and it must be so construed as to render every part of the will effectual, if possible. *Croke Eliz.,* 9; 1 *Jarman on Wills,* 416.

The manifest *general* intent will prevail over the *particular* intent, and when that intent can be ascertained, it

will control the legal operation of the most technical phrases. *Johnson vs. Currin,* 10 *Penn.,* 502 ; *Clarke vs. Boorman,* 18 *Wallace,* 494. This cardinal principle is well illustrated by this Court, in *Taylor vs. Watson,* 35 *Md.,* 524.

It is impossible for any person to examine this will without becoming convinced, that it was Ann Berry's cherished intention to preserve the plantation, called "Berry's Grove," in the Berry family. To carry out this unmistakable purpose, she first endeavors to secure it to her granddaughter, Ann, and to her offspring, and in the event of her death without children, *born of her body,* her purpose is to bestow the estate on her grandson, Elisha Berry,'and his heirs lawfully begotten, forever.

Nothing evidently was more revolting to her wishes than the idea that a stranger to her blood should enjoy the estate.

She knew well enough how to give a fee simple, when she wished to do so, as the other devises show ; but here she studiously excludes the idea that a fee was designed to be vested in Ann Eleanor.

This Court is bound by no considerations of *feudal* policy, which have constrained Courts in countries inheriting the traditions of that system ; on the contrary, if the Act of 1862, ch. 161, which embodies the cherished policy of the State, were applicable to this will, the case would be instantly decided in favor òf the appellants.

The Court will give effect, if possible, to all the words of the devise, and there is but one way by which this can certainly be done—by supposing that the testator intended the failure of issue referred to, to be a *definite,* rather than an *indefinite* failure of issue.

This is the obvious sense of the words employed : " heirs of *her* body *lawfully begotten,*" necessarily imply her children ; they could only be begotten of herself in the life of a person then in being.

The words "issue of her body lawfully begotten," used in the latter part of the same sentence, are utterly inconsistent with the idea of an *indefinite* failure of issue. 2 *Redfield on Wills,* 358, *n.* 5 ; 4 *Kent,* (278) ; *McPherson vs. Snowden,* 19 *Md.,* 197.

The Courts with one voice declare that they will *be astute to devise* a construction which shall restrain the failure of issue to the period of limitation allowed by the law. *Hambleton, et al. vs. Darrington, et al.,* 36 *Md.,* 444 ; 2 *Redfield on Wills,* 657 ; *Chelton vs. Henderson,* 9 *Gill,* 434 ; *Woodland vs. Wallis,* 6 *Md.,* 152 ; *Abbott vs. Essex Co.,* 18 *Howard,* 213.

Elisha Berry was living at the time of the execution of the will and codicil, and had been constituted one of the executors by both, and was evidently an especial object of her bounty.

This favorite grandson, then *in existence,* was especially named as the person who was to receive this estate, in the event of her granddaughter dying childless; and that of itself demonstrates that the failure of issue spoken of, of Ann Eleanor, meant *at the time of the death of Ann.* It would have been contradictory and stupid for the testatrix to say that Elisha Berry should take the estate when Ann Eleanor's heirs should fail a hundred years thereafter. 2 *Redfield on Wills,* 657, *n.* 51, 279 ; *Johnson vs. Currin,* 10 *Penn* , 498 ; *Drummond vs. Stringham,* 36 *Barb.,* 115 ; *Ray vs. Eustin,* 2 *Mass.,* 554.

The testatrix provides for the enjoyment of her bounty by Ann Eleanor, and by "*the heirs of her body lawfully begotten.*" But in her anxiety that the estate should still remain in her family, she carefully directs, that upon her death, "*until issue of her body lawfully begotten,*" "*then,* and *in that case,*" the estate is to devolve upon Elisha Berry.

These words indicate a *point of time* when the estate is to vest in the devisee over—"*then,*" "*at that time,*" viz., *when Ann Eleanor shall die* without issue of her body law-

fully begotten—at no other time but "*then,*" that is, *at the time of Ann Eleanor's death.*   6 *Bac. Abr.,* 115 ; *Pinberry vs. Elkin,* 1 *P. Wms.,* 863 ; *Paine vs. Stratton,* 3 *Br. P. C.,* 257 ; *Wilkinson vs. Jorth,* 7 *T. R.,* 555 ; *Roe vs. Jeffery,* 7 *Term Rep.,* 594.

Notwithstanding that the Act of Assembly gives to an estate tail the incidents of a fee, the words creating the estate remain in the will, and must be applied to explain the residue.   2 *Redfield on Wills,* 277, *note; Wollen, Trustee vs. Frick & Golder, Ex'rs,* 38 *Md.,* 443.

Elisha Berry was the only brother of Ann Eleanor, and as such, was her heir-at-law, failing children and descendants of her body.   It would have been utterly absurd for the testatrix to say, "if my granddaughter dies without heirs, that is, *without a brother,* then my wish is that the estate shall go *to her brother.*"   The failure of heirs spoken of, therefore necessarily meant, the failure of *such* heirs as she had previously described, the *offspring of her body. Fearne on Con. Rem.,* 466 ; *Porter vs. Bradley,* 3 *T. R.,* 146 ; *Roe vs. Jeffery,* 7 *Term Rep.,* 589 ; *Webb vs. Hearing, Cro. Jac.,* 415 ; *Morgan vs. Griffiths, Cowper,* 234 ; *Parker vs. Thacker,* 3 *Levinz,* 70.

*Joseph K. Roberts, Jr.* and *William H. Tuck,* for the appellee.

Ann Eleanor took an estate in fee simple, by force of the Act of 1786, ch. 45, and the limitation over to Elisha Berry, and the heirs of his body, being after an indefinite failure of issue of said Ann Eleanor, is too remote and therefore void.

If at common law such a devise would have created an estate tail in Ann Eleanor, remainder to Elisha in tail, no such remainder can follow the first devise in this case, because a remainder cannot be mounted on a previous devise in fee ; and the estate to Ann Eleanor, being a fee simple under the Act of Assembly, the claim of the plain-

tiffs as tenants in remainder must fail. *Wells vs. Beall,* 2 *G. & J.,* 458 ; *Hill vs. Hill,* 5 *G. & J.,* 87.

This will then presents a devise in fee, defeasible upon a dying without heirs of the body, which would take effect as an executory devise, provided the limitation over is not made to depend on a contingency too remote.

According to the principles applicable to titles under executory devises, there ought to be no doubt as to the interpretation of this will, provided Ann Eleanor took an estate in fee. But, apart from reasoning on principle, this view is supported by cases in our own Court, which cannot be distinguished from the present. It may be that Mrs. Berry intended that the land should go to Elisha in the event of Ann Eleanor dying without heirs of her body, and that the construction maintained by the appellees does violence to that intention ; but we are not dealing merely with her intention, we are to enquire whether this intention, whatever it might have been, can be carried into effect consistently with settled rules of law. The actual intent cannot prevail over the legal intent. *Dashiell vs. Dashiell,* 2 *H. & G.,* 127 ; *Briscoe vs. Briscoe,* 6 *G. & J.,* 232.

In *Dallam vs. Dallam,* 7 *H. & J.,* 220, the subject is elaborately discussed, and all the cases up to that time collected.

In *Newton vs. Griffith,* 1 *H. & G.,* 111, the devise was of different parcels to two in fee, but if either died having no *lawful heirs of his body,* then to the other, &c.; (whereby the previous estate in fee was cut down to an estail tail at common law ;) it was held that, the will being since 1786, the devisees took fee simple estates, and a limitation over on dying without lawful heirs of the body would not take effect.

In *Hatton vs. Weems,* 12 *G. & J.,* 84, the devise was of an equitable estate to his daughter for life, and at her death, to her children, but if she should die *without lawful*

*issue,* then over ; it was held that the "daughter took an equitable estate tail, which in this State is converted into an estate in fee," and the limitation over was too remote. The only difference between the cases is, that that will devised a trust estate, and used the word *issue* where this will devises a legal estate, and uses "*heirs of the body.*" The point of the decision, however, is that the Act of Assembly determined the estate that passed under the will, as we say it does here, to be an estate in fee.

In *Watkins vs. Sears,* 3 *Gill,* 492, the devise was to D, and his heirs, but in case he dies without issue, or within the age of twenty-one, then over. It was held that the limitation over would have been void, but for the dying within twenty-one. The case is directly in point, if we are correct in· asserting that the devise to Ann Eleanor became a fee simple under the Act of 1786, because *issue* and *heirs of the body,* mean the same in law.

" A limitation over after the failure of issue generally does not *per se* import a definite failure." Even as to personalty there must be something to show that the testator intended a definite failure. *Edelen vs. Middleton,* 9 *Gill,* 161. The words, *child, children, issue, descendants, heirs of the body,* &c. in devises of this kind, are held to mean the same. *Torrance vs. Torrance,* 4 *Md.,* 11 ; *Tongue vs. Nutwell,* 13 *Md.,* 415, 426.

*Ridgely vs. Bond,* 18 *Md.,* 448, presented the same questions, where it was held that, according to the will, a fee tail was created by implication (here it is by express words) which, by the Act of Assembly, was made a fee simple, and the first devisee took the whole estate, to the exclusion of those claiming under a limitation over after a *dying without issue.*

The question was decided in *Posey vs. Budd,* 21 *Md.,* 479, 482, and *Budd vs. Posey,* 22 *Md.,* 48, 55, 56, upon a will identical with the present. And also in *Hilleary vs. Hilleary,* 26 *Md.,* 274, the same view of a will and of

the Act of descents, was taken, except that the limitation over was held to be after a definite failure, and therefore good.

In these cases it was decided that the first devise was a *fee tail* enlarged by the Act of Assembly into a *fee simple.*

ALVEY, J., delivered the opinion of the Court.

This is an action of ejectment brought by the appellants against the appellee, to recover a certain parcel of land, being part of the land formerly owned by Ann Berry, and by her devised by will dated the 8th day of November, 1817.

The question involved in this appeal arises as to the true construction of the devise in the will of Ann Berry to her grand-daughter Ann Eleanor Eversfield Berry; and the specific question is, whether, upon the terms of the will, the devise over to Elisha Berry, after the death of Ann Eleanor, *without issue of her body lawfully begotten,* is void because too remote.

The facts necessary to be noticed are but few, and they are all free of question or dispute.

At the date of the will, in 1817, Ann Berry, the testatrix, was a widow, without children living, and Ann Eleanor Eversfield Berry and Elisha Berry, the only children of William Berry, a deceased son of the testatrix, were her only grand-children or living descendants. After the will was executed, but in the same year of its date, Ann Eleanor inter-married with Richard Ayton, who died a few years thereafter, and in 1831 she inter-married with Roderick M. McGregor, but there were no children born of the marriage.

The testatrix died in 1834; Elisha Berry, the grandson, died in 1841, leaving several children; Roderick M. McGregor died in 1857; and in 1876, Ann Eleanor, the grand-daughter of the testatrix, died, without children, or descendants of children; and at the time of her death,

the only children or descendants of Elisha Berry were the female plaintiffs in the present action. It was also shown that in 1843, Roderick M. McGregor and his wife, Ann Eleanor, were divorced *a vinculo;* but before the decree was passed, they conveyed a part of the land devised to Ann Eleanor to Thomas G. Pratt, and the residue to Margery Fergusson, the mother of Ann Eleanor; and after the decree of divorce, that part of the land conveyed to Margery Fergusson was re-conveyed to Ann Eleanor, and that part conveyed to Pratt was re-conveyed to Roderick M. McGregor. McGregor left a will, under which the present appellee claims as one of the residuary devisees therein; the land here in question being part of the land embraced in the deeds to and from Pratt.

With these facts in view, the question of construction arises upon the following clause of Ann Berry's will: " I give, devise and bequeath unto my grand-daughter, Ann Eleanor Eversfield Berry, otherwise called Ann Eleanor Eversfield Fergusson, daughter of Margery Fergusson, my dwelling plantation, called "Berry's Grove," lying and being in Prince George's County, together, &c., as heretofore devised to me by the last will and testament of my deceased husband, Elisha Berry, supposed to contain about two thousand acres, be the same more or less, to her, the said Ann Eleanor Eversfield Berry, otherwise called Ann Eleanor Eversfield Fergusson, *and the heirs of her body lawfully begotten;* and in case the said Ann Eleanor Eversfield *should die without issue of her body lawfully begotten,* then, and in that case, I give, devise and bequeath my said dwelling plantation, &c., as above described, unto my grandson, Elisha Berry, son of the aforesaid Margery Fergusson, and to the heirs of his body lawfully begotten, forever."

If there be any thing settled in the law, it is that a devise to a person, and the heirs of his body lawfully begotten, creates an estate tail in the first taker, by operation.

Josetti, *et al. vs.* McGregor.

of the rule in *Shelley's Case*; and it is equally well settled, by a multitude of cases, that a devise over, dependent upon an indefinite failure of issue of a prior devisee, is a contingency too remote to support a valid executory devise. In regard to these propositions there can be no question.

In this case, no words could have been more appropriate to create an estate tail in Ann Eleanor Eversfield Berry, than those chosen by the testatrix; and that estate having the qualities of a fee simple given it by the Act to direct descents, the devise over to Elisha Berry, made dependent upon the first taker dying without issue of her body lawfully begotten, would seem to present a case so completely within the principles of previous decisions of this Court, as to preclude all question as to the proper construction of the devise. The case, however, has been most ably and ingeniously argued, and all the grounds of discrimination that could possibly distinguish it from previous cases, have been urged; and a long array of authorities have been quoted.

We shall not attempt to go through all the cases upon this subject. They are numerous, and a general review of them would show, not only the great variety in the phraseology of wills, but a considerable conflict of decision among the highest Courts of the country. On this question there is no need of resorting to the decisions of other Courts than our own. The decisions of this Court are ample and sufficiently in point to rule this case, in all the aspects in which it can be presented.

The case of *Newton vs. Griffith,* 1 *H. & G.*, 111, much commented upon and criticised in the argument at bar, is an authority quite conclusive in this case. There, the devise was to J., his heirs and assigns forever; and a separate devise to G., his heirs and assigns forever; with direction or devise, "that all the land which I am now possessed of, either by deed, bond or patent, be equally divided between my said two sons J. and G., according to

quantity and quality, share and share alike, to them, their heirs and assigns forever ; and in case either of my said sons should decease, *having no lawful issue or heirs of his body*, that then the surviving son to have his deceased brother's part or moiety of the land aforesaid, to him, his heirs and assigns forever, as aforesaid ; and in case both my said sons J. and G. should decease, *leaving no lawful heirs of their bodies*, that *then*, and *in such case*, I give and devise all my aforesaid lands, devised as aforesaid, unto my three daughters, S., S. and N., to be equally divided between them."

Upon this devise the question arose as to the rights of the three daughters, under the limitation over to them, upon the brothers dying " leaving no lawful heirs of their bodies." And after a most exhaustive review of all the leading cases down to that time, it was held that the two brothers, J. and G., took, by the general rules of law, irrespective of the statute to direct descents, estates tail general, in the lands respectively devised to them, with cross-remainders in tail general, remainder to the three sisters for life ; but, by operation of the Act to direct descents, the brothers took virtually estates in fee ; and, consequently, the devise over to the daughters was void, because it was after an indefinite failure of issue, and therefore too remote. It was also held, that the words *without issue, without leaving or having issue*, have acquired a technical meaning in judicial construction, and, when used in devises of real estate, mean an indefinite failure of issue, unless restricted by something in the will to import a failure of issue at the death of the first taker, or at some other definite time or event, within the time allowed by law for the taking effect of an executory devise.

Following this case of *Newton vs. Griffith* there are many cases in our reports ; and among them the case of *Posey vs. Budd*, 21 *Md.*, 477, and 22 *Md.*, 48, bears a strong analogy to the present. In that case the devise was

"to J. P., my son, my plantation, &c. to him the said J. P., and *the heirs of his body lawfully begotten;* should J. P. die *without heirs or an heir of his body lawfully begotten,* I will and bequeath all of my estate, &c. to the children of J. L. B., in equal proportions, share and share alike." Upon construction of this devise, as to the real estate, it was held, that J. P. took an estate tail general, converted into a fee simple by operation of the statute, and that the devise over, dependent upon J. P. dying without heirs or an heir of his body, was inoperative and void, because the contingency was too remote.

If we compare the devise in the present case with those construed in *Newton vs. Griffith,* and *Posey vs. Budd,* it is difficult to discover any substantial distinction between them, as to the nature of the estate devised to the first taker, and the event upon which the devise over was designed to take effect. In each case, appropriate terms were and have been employed to create an estate tail general in the first taker; in the two cases referred to the devise over being made dependent upon the first taker dying without heirs, or without leaving heirs of the body, and in the present case, without issue of the body; terms, as we have seen, clearly importing an indefinite failure of issue. Unless then there be something in the will, connected with the devise in question, to restrict the technical meaning of the words upon which the devise over is made to depend, clearly this case falls exactly within the principle of the cases of *Newton vs. Griffith,* and *Posey vs. Budd,* and must be controlled by them.

It was with a view of restricting the words *die without issue,* and to make them import a dying without issue living at the death of the first taker, that so much stress was placed in argument upon the words *then, and in that case,* following the words die without issue of her body lawfully begotten. It was insisted that the word *then,* taken as an adverb of time, has reference, not to the contingent event

when issue might become extinct, but to the time of the death of the first taker.   And there are cases where that form of expression, especially in regard to bequests of personalty, where slight circumstances are relied on to support an executory bequest over, has been allowed some weight.   But bearing in mind that this devise is to be read and construed now as it would or should have been read and construed at the date of the will, and that no subsequent events can operate to change that construction, the question is, was it not the real intention of the testatrix to devise the property to her grand-daughter and her issue or posterity, if any she should have ; but if she should have none, or if her issue should become extinct, *no matter when*, that then the property should go over to the next devisee or his heirs.   If this be the real intent and scope of the devise, the case is too plain for argument ; and it is difficult, indeed impossible, to discover anything on the face of the will sufficient to countervail that construction.   But in the case to which we have already made so much reference, that of *Newton vs. Griffith*, the words " then, and in such case," were there used in connection with the devise over to the daughters, and though there were more circumstances in that case than the present that looked to the meaning of a definite failure of issue, yet there was no stress laid upon those words whatever.

It has been strongly urged, however, that because it does not appear that these words were deemed of importance in that case, and were not considered in deciding upon the validity of the devise over, or, in other words, because the decision is silent in regard to them, they should be laid hold of in this case, in order to distinguish this from the case of *Newton vs. Griffith*.   But we are not of that opinion.

The case of *Newton vs. Griffith* has stood the test of a half century, and has become a landmark in the real

property law of this State. How many valuable titles may have been acquired and are still held upon the authority of that case, it would be difficult to conjecture, though we may suppose them to be many. After this great length of time, and the repeated recognition of the authority of the case by the Courts, any decision by this Court, in the slightest manner questioning or qualifying the decision made in that case, might and probably would lead to the most pernicious consequences. Over refinements and unsubstantial distinctions should be indulged in no class of cases ; but above all others should such refinements and distinctions be excluded in cases involving the principles of real property law. Indeed, if this Court were now to give to the words *then, and in that case,* the force and effect for which the appellants contend should be allowed them, we should virtually overrule *Newton vs. Griffith ;*—an act, the responsibility for which we are not willing to assume.

In the argument for the appellants much reliance was placed on the recent case of *Woollen, Trustee vs. Frick & Golder,* 38 *Md.,* 428.

It was supposed that in that case the Court had adopted a more liberal rule than that declared in *Newton vs. Griffith.* But it requires only slight examination to discover that that case has no application to this whatever.

In fact, though peculiar in its circumstances, it can hardly be said to belong to the same class of cases as the present. As evidence of this, neither in the argument of counsel in that case, nor in the opinion of the Court, were the cases of *Newton vs. Griffith* and *Posey vs. Budd* referred to. There the estate to Woollen was not limited after a fee to Watson, but only in the event that the previous life estate of Watson was not, by the events specified, enlarged into a fee. The enlargement of Watson's estate from a life estate to a fee, depended upon his leaving issue or descendants. If he left issue or descendants at the moment of his death, the estate was enlarged, while, on the other

hand, if he died without leaving such issue at the time of his death, his life estate terminated, and the devise over took effect. In the nature of things, the time of his death was the period at which the contingency was to determine, whether the estate was to be enlarged or to terminate. Watson died without ever having had issue, and the limitation over to Woollen was adjudged good, though resisted upon the ground that it was dependent upon an indefinite failure of issue, and therefore too remote. It is plain, therefore, that there is nothing in that case that tends to support the position of the appellants.

Upon the whole, we are of opinion, that Ann Eleanor Eversfield Berry, the first devisee, took by the devise to her an estate tail general, which, by operation of the statute to direct descents, was converted into an estate in fee simple; and that, therefore, the devise over to Elisha Berry, being after an indefinite failure of issue of the first devisee, was void, because on a contingency too remote. It results that there was no error in the rulings of the Circuit Court, in granting the three prayers on the part of the appellee, and refusing all those offered on the part of the appellants. Therefore, the judgment of the Court below must be affirmed.

*Judgment affirmed.*

(Decided 27th June, 1878.)